1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**FOLEY & LARDNER LLP**
DAVID E. KLEINFELD, SBN 110734
dkleinfeld@foley.com
KURT M. KJELLAND, SBN 172076
kkjelland@foley.com
STEVEN A. MOORE, SBN 232114
smoore@foley.com
SAMUEL R. HELLFELD, SBN 234421
shellfeld@foley.com
11250 El Camino Real, Suite 200
San Diego, CA 92130
Telephone: 858.847.6700
Facsimile:  858.792.6773

Attorneys for Defendants
KYOCERA CORPORATION, KYOCERA WIRELESS CORP. AND
KYOCERA SANYO TELECOM, INC.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SPH AMERICA, LLC, a Virginia company, )<br><br>        Plaintiff, )<br><br>    vs. )<br><br>KYOCERA CORPORATION, a Japanese company, KYOCERA WIRELESS CORPORATION, a Delaware company, and KYOCERA SANYO TELECOM, INC., a Delaware company, )<br><br>        Defendants. )<br>_____ )<br>KYOCERA WIRELESS CORPORATION, a Delaware company, and KYOCERA SANYO TELECOM, INC., a Delaware company, )<br>        Counterclaimants, )<br>    vs. )<br><br>SPH AMERICA, LLC, a Virginia company, )<br><br>        Counterdefendant. )<br>_____ )| Case No. 08-CV-02146 DMS (RBB)<br><br>**DEFENDANTS KYOCERA CORPORATION'S, KYOCERA WIRELESS CORP.'S AND KYOCERA SANYO TELECOM, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO STAY PROCEEDINGS PENDING PATENT REEXAMINATION**<br><br><br>Hearing Date:   May 1,  2009<br>Time:             1:30 p.m.<br>Location:        Courtroom 10<br>Judge:           Honorable Dana M. Sabraw |

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................ 1

II.     THIS ACTION IS AT AN EARLY STAGE .................................................... 3

        A.      The Pleadings Are Not Yet Complete ................................................. 3

        B.      Minimal Discovery Has Occurred ....................................................... 3

        C.      There Has Been Almost No Substantive Activity Since This Case Was
                Transferred, Largely Due to SPH's Own Requests to Delay Resolution
                of Discovery and Scheduling Issues .................................................... 4

III.    ARGUMENT ...................................................................................................... 5

        A.      Stays Pending Reexaminations Are Liberally Granted ....................... 5

        B.      All Factors Weigh Heavily In Favor of a Stay ................................... 6

                1.      Stays Are Routinely Granted In Cases Like This One Which Are
                        Early In The Litigation ........................................................... 7

                2.      A Stay Will Likely Simplify This Action ............................... 8

                3.      Granting A Stay Will Not Prejudice or Disadvantage SPH ... 11

IV.     CONCLUSION ................................................................................................ 11

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

i

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Applera Corp. v. Illumina, Inc.*,
   282 F. Supp. 2d 1120 (N.D. Cal. 2003) ..................................................................6

*ASCII Corp. v. STD Entm't USA, Inc.*,
   844 F. Supp. 1378 (N.D. Cal. 1994) ...............................................................1, 5, 7, 8

*Bloom Eng'g Co., Inc. v. North Am. Mfg. Co.*,
   129 F.3d 1247 (Fed. Cir. 1997)...............................................................................10

*EchoStar Techs. Corp. v. TiVo, Inc.*,
   2006 U.S. Dist. LEXIS 48431 (E.D. Tex. July 14, 2006)..........................................5

*Emhart Indus., Inc. v. Sankyo Seiki Mfg. Co.*,
   3 U.S.P.Q.2d 1889 (N.D. Ill. 1987) ..........................................................................6

*Ethicon, Inc. v. Quigg*,
   849 F.2d 1422 (Fed. Cir. 1988)..................................................................................5

*GPAC, Inc. v. DWW Enterprises, Inc.*,
   144 F.R.D. 60 (D.N.J. 1992)...................................................................................5, 7

*Guthy-Renker Fitness, LLC v. Icon Health & Fitness Inc.*,
   48 U.S.P.Q.2d 1058 (C.D. Cal. 1998)............................................................. passim

*Methode Elecs., Inc. v. Infineon Techs. Corp.*,
   2000 U.S. Dist. LEXIS 20689 (N.D. Cal. Aug. 7, 2000)............................5, 7, 8, 10

*Output Tech. Corp. v. Dataproducts Corp.*,
   22 U.S.P.Q.2d 1072 (W.D. Wash. 1991) ...................................................................8

*Patlex Corp. v. Mossinghoff*,
   758 F.2d 594 (Fed. Cir. 1985).....................................................................................5

*Pod-ners, LLC v. Tutuli Produce Corp.*,
   2001 U.S. Dist. LEXIS 25945 (C.D. Cal. Aug. 17, 2001)......................................5, 9

*Snyder Seed Corp. v. Scrypton Sys. Inc.*,
   52 U.S.P.Q.2d 1221 (W.D.N.Y. 1999) .......................................................................6

*Target Therapeutics, Inc. v. SciMed Life Sys., Inc.*,
   33 U.S.P.Q.2d 2022 (N.D. Cal.1995) ........................................................................8

*Telemac Corp. v. Teledigital, Inc.*,
   450 F. Supp. 2d 1107 (N.D. Cal. 2006) .....................................................................7

ii

*Teradyne, Inc. v. Hewlett-Packard Co.*,
    1993 U.S. Dist. LEXIS 14601 (N.D. Cal. Jan. 7, 1993) ............................................................6

*Tse v. Apple Inc.*,
    2007 U.S. Dist. LEXIS 76521 (N.D. Cal. Oct. 4, 2007)........................................................1


**STATUTES**

28 U.S.C. § 1404(a) .....................................................................................................................4

35 U.S.C. §112(6) ......................................................................................................................10

35 U.S.C. §§ 307(b) and 252 .....................................................................................................10

35 U.S.C. § 315(c) .......................................................................................................................5

Fed. R. Civ. P. 15(a)(3)................................................................................................................3


**OTHER AUTHORITIES**

Dale L. Carlson & Jason Crain, *Reexamination: A Viable Alternative to Patent
    Litigation?* .............................................................................................................................8

H.R. Rep. No. 96-1307 (1980)......................................................................................................6

DLMR_585565.2

## I.      INTRODUCTION

On March 16, 2009, Kyocera Corporation, Kyocera Wireless Corp., and Kyocera Sanyo Telecom, Inc. (collectively, "Kyocera") filed with the United States Patent and Trademark Office ("Patent Office") petitions for reexamination of the two patents-in-suit—U.S. Patent Nos. RE40,385 and 5,960,029 ("the patents-in-suit")—on grounds that substantial issues of patentability exist as to both patents-in-suit.  Specifically, Kyocera's petitions show that the patents-in-suit are plainly invalid in view of certain prior art that the Patent Office never had before it when it initially issued the patents.  In this regard, Kyocera filed a request for *inter partes* reexamination of all 243 asserted claims of the '385 patent and a request for *ex parte* reexamination of all 10 asserted claims of the '029 patent.[1]  Kyocera now requests that the Court stay all proceedings in this action pending reexamination.  Since it is highly likely that the claims of the patents-in-suit will be amended or cancelled, the reexamination will have a significant impact on the issues to be resolved by this Court.  There is a liberal policy in favor of granting a stay under these circumstances,[2] particularly where, as here, all relevant factors weigh in favor of a stay.

**First, this action is in its infancy**.  The pleadings in this case are not yet complete, as Kyocera has only just answered SPH's First Amended Complaint yesterday and SPH has not answered Kyocera's counterclaims.  The parties have conducted limited written discovery and no depositions have taken place.  This Court has not issued a scheduling order or performed

---

[1] *See* Declaration of Nicole Cunningham ("Cunningham Decl."), Exs. D and E.  SPH cannot legitimately argue that a stay should be denied because the Patent Office has not yet granted Kyocera's requests for reexamination.  In fact, statistics show that the Patent Office grants almost all requests for reexamination.  Specifically, the Patent Office grants 92% of *ex parte* requests and 96% of *inter partes* requests.  *See id.*, Ex. A at 20 and 22 (U.S.P.T.O., *Ex Parte* and *Inter Partes* Reexamination Filing Data, December 31, 2007).  Thus, it is highly likely that the Patent Office will grant Kyocera's requests and commence reexamination proceedings.  Moreover, in light of the "liberal policy" favoring stays pending reexamination, a court can grant a stay even if the Patent Office is still considering whether to grant a party's reexamination request.  *See, e.g., ASCII Corp. v. STD Entm't USA, Inc.*, 844 F. Supp. 1378, 1381 (N.D. Cal. 1994) (granting stay based on party's contemplated filing for reexamination); *Tse v. Apple Inc.*, 2007 U.S. Dist. LEXIS 76521, at *5 (N.D. Cal. Oct. 4, 2007).
[2] *See, e.g., ASCII Corp.*, 844 F. Supp. at 1381.

1

any claim construction, nor has it set a trial date.  Indeed, the substantive issues and discovery in this case have been at a near standstill since the case was transferred to this Court in mid-November, based in large part on SPH's own requests to delay such activities.  Accordingly, this action is both new to this Court and in its earliest stages.

**Second, a stay at this stage of the case will simplify the issues**.  The outcome of the reexaminations will impact issues regarding the scope and validity of the patents-in-suit.  As such, it would be a waste of both the parties' and the Court's resources if the litigation went forward and the claims were subsequently declared invalid or were amended by the Patent Office.  Moreover, waiting for the outcome of the reexaminations could eliminate the need for trial altogether if the claims are cancelled.  And even if some claims survive, the reexamination will aid the Court by providing it with the expert opinion of the Patent Office, clarifying the scope of the claims, and simplifying the issues for trial.  Such simplification would be particularly beneficial here, where the technology at issue is incredibly complex, and where SPH has accused more than sixty products of infringement and asserted more than 250 claims.[3] Conducting discovery and claim construction on all of these products and claims now during the Patent Office's reexamination would be akin to shooting at a moving target, given that the claims are likely to change.  Thus, the efficiencies to be gained by a stay of this litigation pending reexamination are substantial.

**Finally, a stay will not cause prejudice to SPH nor will it put SPH at a clear disadvantage.**  Because SPH admittedly neither makes nor sells any products and since its only business is licensing and litigating patents, SPH would not experience any competitive disadvantage from a stay.  Further, SPH's own repeated requests to delay resolution of discovery issues and to delay progress in this case pending transfer proceedings belie any argument that SPH might make that delay would cause it to suffer prejudice.

Because each of the relevant factors weigh in favor of staying this action pending reexamination, Kyocera's motion should be granted.

---

[3] Due to the extreme complexity of the technology and the large number of claims, Kyocera filed a Motion to Limit Claims, which the Court denied without prejudice on March 4, 2009.

2

## II.   THIS ACTION IS AT AN EARLY STAGE

### A.   The Pleadings Are Not Yet Complete

SPH filed this case in the Eastern District of Virginia on July 9, 2008.[4]  In its initial complaint, SPH asserted three patents against Kyocera—U.S. Patent Nos. RE40,385, 5,960,029, and RE40,253.  SPH filed a First Amended Complaint on February 12, 2009, withdrawing U.S. Patent No. RE40,253 from the case because Kyocera's products do not use the WCDMA technology covered by that patent.[5]  Kyocera has only just filed an Answer to SPH's First Amended Complaint.  In addition, SPH has yet to file an Answer to Kyocera's counterclaims.[6]

### B.   Minimal Discovery Has Occurred

Discovery in this case has just begun, and minimal substantive discovery has been completed.  The parties have served their Initial Disclosures pursuant to Rule 26(a), as well as initial written discovery requests and responses.  SPH has served its infringement contentions, which are deficient as described below.  No other written discovery has taken place, and no depositions have occurred.

Document production is also in its incipient stages.  In fact, SPH has only produced a mere 169 documents.  Similarly, although a few third-party subpoenas for documents have been issued, the only documents produced to date by a third-party are fourteen irrelevant documents by the Telecommunications Industry Association and 68 documents recently produced by Motorola Corporation.

---

[4] Docket No. 1.

[5] Docket No. 118.

[6] SPH filed a Motion to Dismiss Kyocera's Counterclaims and Strike Its Affirmative Defenses on October 6, 2008.  The Virginia Court granted the motion in part and denied it in part.  *See* Docket Nos. 45 and 81-82.  Following that ruling, the parties stipulated that Kyocera could amend its counterclaims to address issues raised by the Court and to add an inequitable conduct claim.  *See* Docket No. 85.  Kyocera only filed its amended counterclaims yesterday, as the Virginia Court ordered the case transferred to this District on November 14, 2008 and SPH did not file its First Amended Complaint until February 12, 2009.  SPH has ten days to file an Answer.  *See* Docket No. 118; Fed. R. Civ. P. 15(a)(3).

3

Moreover, to the extent SPH has produced any discovery at all, it has been grossly deficient. Specifically, SPH has failed to supplement its Initial Disclosures with information required months ago, including basic employee contact information of key inventors of the patents-in-suit. SPH has also failed to produce entire categories of relevant documents, and in fact, the vast majority of documents it has produced to date are mere copies of the patents-in-suit, related patents and file histories. Finally, SPH has failed to supplement its infringement contentions with information and documents required by the Patent Local Rules. The contentions are deficient because they fail to identify where any element of the asserted claims is found within the accused products or to identify the structures in the accused products that perform the means-plus-function claims, instead only charting the asserted claims to the public CDMA2000 standard. Further, SPH has not yet produced any documents showing conception, reduction to practice, design and development of each claimed invention.

### C. There Has Been Almost No Substantive Activity Since This Case Was Transferred, Largely Due to SPH's Own Requests to Delay Resolution of Discovery and Scheduling Issues

On November 14, 2008, the Virginia Court granted Kyocera's Motion to Transfer Venue to this District pursuant to 28 U.S.C. § 1404(a).[7] As a result of the transfer ruling and at SPH's request, the parties agreed that "all deadlines or other obligations are suspended" until resolution of venue issues.[8] At SPH's urging, Kyocera later agreed to put all discovery and scheduling issues on hold until the parties reach an agreement or the Court sets a schedule for the parties.[9] Accordingly, no discovery deadlines are currently on calendar. Neither discovery dates, nor claim construction dates, nor a trial date are scheduled. In fact, this Court has not yet

---

[7] Docket Nos. 89 and 94.

[8] Cunningham Decl., Ex. B (November 18, 2008 email from Mr. Davis to Mr. Kjelland and Mr. Kleinfeld). Following the mid-November transfer of this case, SPH initiated a vigorous and drawn-out series of attempts to reverse the Virginia Court's ruling, first filing a Motion for Reconsideration in Virginia and, upon losing that motion, re-hashing its frivolous arguments against transfer in a Motion for Retransfer in this Court, which the Court denied on March 4, 2009.

[9] *Id.*, Ex. C (email string containing January 9-10, 2009 emails between Mr. Denning and Mr. Hellfeld).

4

held a Case Management Conference.

## III.   ARGUMENT

### A.   Stays Pending Reexaminations Are Liberally Granted

The decision to stay litigation pending a reexamination proceeding is firmly within the discretion of this Court.[10]  In fact, California courts have emphasized that "[t]here is a liberal policy in favor of granting motions to stay proceedings pending the outcome of reexamination proceedings," especially in cases that are still in the initial stages of litigation and where there has been little or no discovery.[11]  Thus, courts routinely stay cases pending the outcome of Patent Office reexamination proceedings.[12]  This is particularly true where the reexamination is *inter partes*,[13] because Kyocera will be statutorily estopped from arguing that the patent is invalid in this Court if it is deemed valid by the Patent Office.[14]

This procedure adhered to by district courts is consistent with Congressional intent, which "favors a district court's issuance of a stay in patent litigation pending the outcome of a reexamination proceeding by the [Patent Office]…[B]y enacting the reexamination procedure Congress meant 'to provide an inexpensive, expedient means of determining patent validity

[10] *See, e.g., Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988) ("Courts have inherent power to manage their dockets and stay proceedings, including the authority to order a stay pending conclusion of a [Patent Office] reexamination."); *GPAC, Inc. v. DWW Enterprises, Inc.*, 144 F.R.D. 60, 66 (D.N.J. 1992); *Methode Elecs., Inc. v. Infineon Techs. Corp.*, 2000 U.S. Dist. LEXIS 20689, at *6 (N.D. Cal. Aug. 7, 2000) ("In determining whether to grant a motion to stay, the district court has considerable latitude."); *Patlex Corp. v. Mossinghoff*, 758 F.2d 594, 606 (Fed. Cir. 1985) ("The stay of pending litigation to enable review of contested patents was one of the specified purposes of the reexamination legislation.").

[11] *ASCII Corp.*, 844 F. Supp. at 1381; *Guthy-Renker Fitness, LLC v. Icon Health & Fitness Inc.*, 48 U.S.P.Q.2d 1058, 1060 (C.D. Cal. 1998).

[12] *See, e.g., Pod-ners, LLC v. Tutuli Produce Corp.*, 2001 U.S. Dist. LEXIS 25945, at *7 (C.D. Cal. Aug. 17, 2001); *Methode Elecs.*, 2000 U.S. Dist. LEXIS at *9; *Guthy-Renker*, 48 U.S. P.Q.2d at 1061; *ASCII Corp.*, 844 F. Supp. at 1381.

[13] Kyocera filed a request for *inter partes* reexamination of the '385 patent.

[14] 35 U.S.C. § 315(c); *see also EchoStar Techs. Corp. v. TiVo, Inc.*, 2006 U.S. Dist. LEXIS 48431, at *9 (E.D. Tex. July 14, 2006) (stating that "an *inter partes* reexamination can have no other effect but to streamline ongoing litigation," providing a "compelling reason to grant a stay").

5

which….should be deferred to by the courts."[15]  Further, granting a stay pending reexamination is advantageous for both the Court and the parties involved.  Courts have recognized the following advantages of staying court proceedings pending reexamination:

> 1.  All prior art presented to the Court will have been first considered by the Patent Office, with its particular expertise.
>
> 2.  Many discovery problems relating to prior art can be alleviated by Patent Office reexamination.
>
> 3.  In those cases resulting in effective invalidity of the patent, the suit will likely be dismissed.
>
> 4.  The outcome of the reexamination may encourage a settlement without the further use of the Court.
>
> 5.  The record of reexamination would likely be entered at trial, thereby reducing the complexity and length of the litigation.
>
> 6.  Issues, defenses, and evidence will be more easily limited in pre-trial conferences after a reexamination.
>
> 7.  The cost will likely be reduced both for the parties and the Court.
>
> 8.  The time and expense of a *Markman* hearing will be avoided as to claims which are cancelled or amended.[16]

## B.   All Factors Weigh Heavily In Favor of a Stay

In determining whether to grant a motion to stay, courts generally consider the following factors:  (1) the stage of the litigation, including whether discovery is complete and a trial date has been set; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether a stay would unduly prejudice or present a clear tactical disadvantage to

---

[15] *Applera Corp. v. Illumina, Inc.*, 282 F. Supp. 2d 1120, 1129 (N.D. Cal. 2003); *see also* H.R. Rep. No. 96-1307 (1980), quoted in *Teradyne, Inc. v. Hewlett-Packard Co.*, 1993 U.S. Dist. LEXIS 14601, at *25 (N.D. Cal. Jan. 7, 1993) (indicating approval of district courts granting stays as a way to prevent "costly pretrial maneuvering which attempts to circumvent the reexamination procedure [and to] provide a useful and necessary alternative for challengers and for patent owners to test the validity of United States patents in an efficient and relatively inexpensive manner").

[16] *Snyder Seed Corp. v. Scrypton Sys. Inc.*, 52 U.S.P.Q.2d 1221, 1223 (W.D.N.Y. 1999); *Emhart Indus., Inc. v. Sankyo Seiki Mfg. Co.*, 3 U.S.P.Q.2d 1889, 1890 (N.D. Ill. 1987).

the non-moving party.[17]  Each of these three factors weighs heavily in favor of granting a stay in this action.  Accordingly, Kyocera requests that the Court stay all proceedings in this action until the Patent Office concludes its reexamination.

### 1.     Stays Are Routinely Granted In Cases Like This One Which Are Early In The Litigation

This litigation is still in its nascent stages, as SPH has itself emphasized in recent motion practice.[18]  The pleadings are not complete, as Kyocera has only yesterday answered SPH's First Amended Complaint and filed its amended counterclaims, and SPH has yet to substantively reply to Kyocera's counterclaims.  The parties have not exchanged any proposed claim construction terms or supporting materials under the Patent Local Rules, and no dates to do so are even on calendar.  No dispositive motions have been submitted, no briefing on claim construction has been filed, and no *Markman* hearing date or trial date has been set.  Indeed, a Case Management Conference has not yet been held.

Similarly, limited discovery has taken place.  Apart from initial disclosures and basic written discovery, a small volume of document production, and SPH's deficient infringement contentions, the parties have not advanced discovery in this case at all.  The parties have not taken a single deposition.  SPH has yet to supplement its infringement contentions and Kyocera has yet to serve its invalidity contentions.  In fact, since mid-November, when the case was transferred to this Court, discovery has been at a near complete standstill, at SPH's urging.

In cases similar to this one, courts routinely grant stay motions.  For example, in *Methode Elecs.*, the court concluded that the case was "in its incipient stages" and granted a stay.[19]  The facts considered by the court in deciding to grant the stay included that the case was pending for only eight months, no depositions had been taken and no trial date had been

---

[17] *Guthy-Renker*, 48 U.S.P.Q.2d at 1060; *Methode Elecs.*, 2000 U.S. Dist. LEXIS at *5-6; *Telemac Corp. v. Teledigital, Inc.*, 450 F. Supp. 2d 1107, 1111 (N.D. Cal. 2006); *ASCII Corp.*, 844 F. Supp. at 1380; *GPAC*, 144 F.R.D. at 64.
[18] SPH Memorandum of Points & Authorities in Opposition to Motion to Limit Claims at 1-2 (stating that "the case has only just begun," emphasizing that no significant discovery has occurred, and noting that a procedural schedule is not even yet in place).
[19] *Methode Elecs.*, 2000 U.S. Dist. LEXIS at *6.

set.[20]  Similarly, this case has been pending less than eight months, no depositions have been taken, and no trial date has been set.  And the facts before this Court are even more compelling since the parties have not yet even completed the pleadings and the only hearing currently scheduled is the April 9, 2009 Case Management Conference, which Magistrate Judge Brooks indicated he would be inclined to take off calendar if the reexaminations and motion to stay were filed.[21]

As in *Methode Elecs*., a stay should be granted here.  Doing so at this early stage will avoid the waste of time, money, and resources by the Court, the parties, and any jury adjudicating claims that are cancelled or amended during reexamination proceedings.

### 2.      A Stay Will Likely Simplify This Action

A stay is likely to simplify this action due to cancellation or amendment of the claims of the patents-in-suit expected to result from reexamination by the Patent Office.  In fact, California courts have noted that 77% of Patent Office *ex parte* reexaminations lead to cancelled or amended claims.[22]  The likelihood of cancelled or amended claims is even higher where reexamination is *inter partes*, like the reexamination of the '385 patent requested by Kyocera here, with 92% of such proceedings resulting in the cancellation or amendment of all claims identified for reexamination *and fully three-quarters resulting in the cancellation of all claims*.[23]  Thus, since the claims of the patents-in-suit will likely be amended or cancelled, the

---

[20] *Id.*

[21] *See also Guthy-Renker*, 48 U.S.P.Q.2d at 1061 (granting stay because the case was "relatively new, and no significant discovery or trial preparation had taken place); *ASCII Corp*., 844 F. Supp. at 1381 (granting stay because parties were "in the initial stages of the lawsuit and have undertaken little or no discovery"); *Target Therapeutics, Inc. v. SciMed Life Sys., Inc*., 33 U.S.P.Q.2d 2022, 2023 (N.D. Cal. Jan. 13, 1995) (granting stay where discovery had commenced, but not proceeded significantly).

[22] *Guthy-Renker*, 48 U.S.P.Q.2d at 1060 (citing *Output Tech. Corp. v. Dataproducts Corp.*, 22 U.S.P.Q.2d 1072, 1074 (W.D. Wash. 1991)); *see also* Dale L. Carlson & Jason Crain, *Reexamination: A Viable Alternative to Patent Litigation?*, 3 Yale Symp. L. & Tech. 2, 15 (2000) (stating that sixty-four percent of reexaminations result in the cancellation of some claims and twelve percent result in the cancellation of the entire patent); Cunningham Decl., Ex. A at 20 (U.S.P.T.O. *Ex Parte* Reexamination Filing Data, December 31, 2007).

[23] *Id.* at 22 (U.S.P.T.O. *Inter Partes* Reexamination Filing Data, December 31, 2007).

8

reexamination will have a significant impact on the issues to be resolved by this Court.

Moreover, proceeding with this action will likely be inefficient and complicate any claim construction analysis as well as the parties' discovery efforts. If the claims are cancelled for invalidity, such efforts will be entirely unnecessary as the litigation will be terminated. And even if some claims are confirmed, the parties will be better able to frame construction, infringement, validity, and enforceability issues after the Patent Office has reexamined the patents-in-suit, particularly given the high likelihood that the scope or viability of the claims will change significantly as a result of reexamination. In other words, because the reexamination is likely to change the claims of the patents-in-suit, it has direct bearing on all issues in this case. Indeed, "[a]bsent a stay, the parties may end up conducting a significantly wider scope of discovery than necessary, and the court may waste time examining the validity of claims which are modified or eliminated altogether during reexamination."[24] Similarly, district courts have explicitly recognized that waiting for the outcome of a reexamination may eliminate the need for trial altogether or, at a minimum, clarify the scope of claims in issue.[25]

These benefits would be magnified in this case, given the extreme complexity of the technology at issue and the large number of accused products and asserted claims. In its infringement contentions, SPH alleges that 63 separate Kyocera products infringe 253 different claims of the patents-in-suit. The electrical engineering technology in this case is complex, as the patents-in-suit relate to the creation and processing of specific electrical signals that are ultimately used to convey voice and data signals from a cellular phone to a cellular base station—a process called modulation. The 243 asserted claims of the '385 patent all rely upon sophisticated mathematical expressions to describe these signals, and further include various other structures or processes for generating them. Understanding the complex nature of the mathematics contained in these claims is not a trivial undertaking even for experienced

---

[24] *Guthy-Renker*, 48 U.S.P.Q.2d at 1060.

[25] *Id.*; *see also Pod-ners*, 2001 U.S. Dist. LEXIS at *7 (action stayed pending reexamination because "staying the action may substantially reduce the number of legal issues before the Court").

9

engineers in the field of wireless communications.  While the '029 patent does not claim specific mathematical expressions, the technology is similarly difficult, and the claim construction issues will be tedious, due to the extensive use of means-plus-function language pursuant to 35 U.S.C. §112(6).

The *Markman* process for construing this tremendous number of technologically complex claims and the discovery and trial work and expense necessary to apply such claims to over sixty accused products will consume extraordinary amounts of party, expert, and judicial resources.  To force the parties and the Court to devote such extraordinary amounts of time and to incur these expenses *now*, when the claims are almost certain to change or even be cancelled during the reexamination process, would be grossly inefficient.

In addition, changes to the claims of the patents-in-suit will likely simplify damages issues.  There can be no damages for an assertion of a cancelled claim.  And, for an amended claim, damages are recoverable only from the date of issuance of the reexamination certificate.[26]  Thus, a stay will likely save the parties from costly, unnecessary discovery regarding damages.

Finally, regardless of the outcome of the reexamination proceedings, it is likely that "the [Patent Office's] expert opinion will help the Court focus on the pertinent issues."[27]  Courts have found it expedient to allow the Patent Office, an expert in the patent field, to determine the ultimate scope of the claims before trying to determine whether there has been infringement.  "[S]ince the Court will need to interpret the pertinent claims of the [patents-in-suit] at some point during this case, waiting until after the reexamination will provide this Court with the expertise of the [Patent Office]."[28]

---

[26] 35 U.S.C. §§ 307(b) and 252; *Bloom Eng'g Co., Inc. v. North Am. Mfg. Co.*, 129 F.3d 1247, 1249-50 (Fed. Cir. 1997).

[27] *Methode Elecs.*, 2000 U.S. Dist. LEXIS at *7.

[28] *Guthy-Renker*, 48 U.S.P.Q.2d at 1060-61; *Methode Elecs.*, 2000 U.S. Dist. LEXIS at *6-7 (noting that stay allows "the parties and the Court to take advantage of the [Patent Office's] conclusions regarding the prior art").

10

### 3.      Granting A Stay Will Not Prejudice or Disadvantage SPH

SPH is a single-employee company whose sole business is suing over its licensed patents.  SPH does not manufacture or sell a single product, let alone any product that falls within the scope of the patents-in-suit.  Therefore, SPH will not be put at any competitive disadvantage if there is a stay pending reexamination.  Each of the Kyocera defendants is a major company that will be able to satisfy any damages awarded to SPH if it were to be successful in establishing that the patents-in-suit are infringed.

Moreover, SPH cannot now credibly complain that any delay that might result from staying this action will prejudice it in any way.  SPH has itself vigorously requested a standstill on discovery.[29]  SPH's own actions demonstrate that it will not be prejudiced by awaiting the outcome of the Patent Office's reexamination.

Finally, because this action is in its incipient stages and "no significant discovery and trial preparation has taken place," it is unlikely that any undue prejudice will result from a stay since SPH cannot "demonstrate[] that substantial expense and time has been invested in [the] litigation which would militate against a further delay of disposition of [the] matter."[30]  Indeed, it is likely that SPH will *benefit* from a stay of these proceedings, since substantial discovery remains to be completed and SPH has yet to remedy numerous deficiencies in its infringement contentions, initial disclosures, and document productions that were identified by Kyocera.[31]

## IV.      CONCLUSION

For the foregoing reasons, Kyocera respectfully requests that the Court stay this action in its entirety pending the outcome of the Patent Office's reexamination of the patents-in-suit.

///

///

---

[29] *See* Cunningham Decl., Exs. B and C (November 18, 2008 email from Mr. Davis to Mr. Kjelland and Mr. Kleinfeld and email string containing January 9-10, 2009 emails between Mr. Denning and Mr. Hellfeld).
[30] *Guthy-Renker*, 48 U.S.P.Q.2d at 1061.
[31] *See* Section II(B).

Dated:  March 17, 2009

Respectfully submitted,
FOLEY & LARDNER LLP


/S/ Kurt M. Kjelland
David E. Kleinfeld
Kurt M. Kjelland
Steven A. Moore
Samuel R. Hellfeld

Attorneys for Defendant KYOCERA
CORPORATION, KYOCERA WIRELESS
CORP. AND KYOCERA SANYO TELECOM,
INC.

12

DLMR_585565.2

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above and foregoing documents has been served on March 17, 2009 to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Civil Local Rule 5.4.  Any other counsel of record will be served by electronic mail, first class mail, facsimile and/or overnight delivery.

/S/ Kurt M. Kjelland
Kurt M. Kjelland (SBN 172076)
kkjelland@foley.com

Attorneys for Defendant KYOCERA
CORPORATION, KYOCERA WIRELESS
CORP. AND KYOCERA SANYO TELECOM,
INC.

13

DLMR_585565.2